1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15
16

| | |
|---|---|
| JESSE JAMES PALATO,<br><br>Petitioner,<br><br>v.<br><br>DWAYNE HAMILTON, et al.,<br><br>Respondents. | Case No. CV 19-0346-JEM<br><br>MEMORANDUM OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY |

17
18
19
20
21
22
23
24
25
26
27
28

**PROCEEDINGS**

On January 16, 2019, Jesse James Palato ("Petitioner"), a state parolee, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. Section 2254 ("Petition").  On April 11, 2019, Warden Hamilton ("Respondent") filed a motion to dismiss the Petition as partially unexhausted.  On January 2, 2020, the Court denied the motion without prejudice and directed Respondent to file an Answer.  On January 30, 2020, Respondent filed an Answer. On February 21, 2020, Petitioner filed a Traverse.

Pursuant to 28 U.S.C. § 636(c), both parties have consented to proceed before this Magistrate Judge.

**PRIOR PROCEEDINGS**

On July 17, 2015, a Los Angeles County Superior Court jury found Petitioner guilty of annoying or molesting a child (Cal. Penal Code § 647.6(a)(1)), a misdemeanor (Count Three); contacting a child with intent to commit lewd act (Cal. Penal Code § 288.3(a)), a felony (Count Four); and attempting to meet a child for a lewd purpose (Cal. Penal Code §§ 288.4(a)(1), 664), a misdemeanor (Count Seven).  Count Three related to victim F.H. and Counts Four and Seven related to victim A.M.  (Lodged Document ("LD") 15, 2 Clerk's Transcript ("CT") 269-71, 276-77.)  On August 12, 2015, the trial court sentenced Petitioner to state prison for a total term of three years and 364 days.  (2 CT 302-04.)

Petitioner appealed to the California Court of Appeal.  (LD 17.)  On October 26, 2017, the Court of Appeal affirmed the judgment.  (LD 2.)  Petitioner filed a petition for review in the California Supreme Court (LD 3), which summarily denied review on January 17, 2018 (LD 4).

Petitioner filed a habeas petition in the Los Angeles County Superior Court.  (LD 5.)  On January 5, 2018, the Superior Court denied the petition in a reasoned order.  (LD 6 at 22.)  Petitioner filed a habeas petition in the California Court of Appeal, which summarily denied it on January 31, 2018.  (LD 7-8.)  Petitioner filed a petition for review in the California Supreme Court, which summarily denied review on March 14, 2018.  (LD 13.)

Petitioner next filed a habeas petition in the California Supreme Court.  (LD 11.)  On August 8, 2018, the California Supreme Court denied the petition with citations to In re Clark, 5 Cal.4th 750, 767-69 (1993) (courts will not entertain habeas corpus claims that are successive), and In re Dixon, 41 Cal.2d 756, 759 (1953) (courts will not entertain habeas corpus claims that could have been, but were not, raised on appeal).  (LD 12.)

Petitioner filed another habeas petition in the California Supreme Court, which summarily denied it on January 16, 2019.  (LD 9-10.)

1

**SUMMARY OF EVIDENCE AT TRIAL**

Based on its independent review of the record, the Court adopts the following factual summary from the California Court of Appeal's unpublished opinion as a fair and accurate summary of the evidence presented at trial:

**(a) Count 3: Victim F.H. (Including June 2012 Events).**

Viewed in accordance with the usual rules on appeal [citation omitted], the evidence established as follows. F.H. was born in November 2000. During the events pertaining to count 3, F.H. was 11 years old and in the sixth grade at a Baldwin Park elementary school. [Petitioner] was a basketball coach at his school.

F.H. had a Facebook account. [Petitioner] sent him a "friend request" on Facebook and F.H. accepted. Besides adult family members, [Petitioner] was the only other adult with whom F.H. was "friends" on Facebook. The communications below between F.H. and [Petitioner] were private messages between [Petitioner]'s and F.H.'s Facebook accounts. The actual misspellings and abbreviations used in those messages are reflected below.

[Petitioner] began sending F.H. messages in April 2012. Initially, F.H. and [Petitioner] conversed about general topics such as basketball and movies. On June 1, 2012, apparently after F.H. was not responsive to his messages, [Petitioner] sent him a message stating, "Did I do sumthing to u? ? [¶] R u emo???"[1] [Petitioner] sent another message asking, "U have a gf [F.H.]??" (F.H. testified that "gf" meant "girlfriend.") F.H. replied, "[Y]es bye[.]" [Petitioner] said, "Lol. ... jus wondering[.] [¶] Ur weird ... bye[.] [¶] Nd quit wearing black all the time. [¶] Nd sweaters[.] [¶] Its summer time."

---

[1]     F.H. testified that he did not really know what "emo" meant.

On June 6, 2012, [Petitioner] asked F.H., "R u gay?  Jus askin . . . . [¶] R u? ? [¶] I guess u r."  [Petitioner] then said, "R U? ? ? [¶] U kno silence tells a lot. [¶] Nd I kno ur emo."  F.H. finally replied, "[S]top sending me messages plz." However, [Petitioner] continued, "Y u cnt answer the question.  Jus tell me ... ur gay right???  Between [u and me] . . . . [¶] Nd you lied to me . . . u dnt have a gf." F.H. did not respond.  Less than 24 hours later, [Petitioner] wrote, "Hey its me again[.] [¶] . . . [¶] R u gay or bi or curious?  I know you [don't have] a GF[.]  I guess u r. . . I'll quit askin. . . I kno the [answer] . . . it's against GOD, u kno. . . ."

F.H. testified it made him uncomfortable when [Petitioner] repeatedly asked if he was gay or curious.  F.H. stopped going to basketball games as a result. F.H. testified that, due to [Petitioner]'s Facebook messages, F.H. was afraid of him and thought he would try to do something bad to F.H., "like rape" him.

F.H.'s older sister, Kimberly C. (Kimberly), noticed [Petitioner]'s messages on her brother's Facebook account.  From [Petitioner]'s photograph on his Facebook account, she concluded that he was over 30 years old.  Kimberly, pretending to be F.H., began communicating with [Petitioner] on Facebook to gather information, because she found the messages bizarre and very inappropriate.  Kimberly eventually revealed to [Petitioner] that she was F.H.'s older sister.  She asked [Petitioner] what a person of his age had in common with an 11–year-old boy.  She also asked if it was not weird for [Petitioner] to be conversing so much, and "in such a way," with an 11–year-old boy.  [Petitioner] did not respond.  Kimberly and F.H. reported the matter to the police.

**(b) Counts 4 and 7: Victim A.M. (Including July 2014 Events).**

A.M. was born on July 5, 2001.  During the events pertaining to counts 4 and 7, A.M. attended the same school as F.H., and [Petitioner] was A.M.'s school basketball coach.  A.M. had a Facebook account.  [Petitioner] sent him a friend

4

request and A.M. accepted.   The communications below between A.M. and [Petitioner] were private messages via Facebook.

Initially, [Petitioner] and A.M. conversed about basketball. On July 4, 2014, [Petitioner], who owned a fireworks stand, told A.M. that he would give A.M. free fireworks.  However, [Petitioner] later said A.M. "had to let [Petitioner] fuck [A.M.]" to get the fireworks.

On July 14, 2014, [Petitioner] wrote to A.M., "Hey, way. Let me hit.  LOL." [Petitioner] asked if A.M. wanted to go to a movie.  A.M. made arrangements with [Petitioner] to meet him on July 19, 2014, to see a movie. A.M. later said he could not go because he had to go to Mexico.   [Petitioner] said, "Let me hit on Thursday."  A.M. replied, "Maybe."  [Petitioner] said, "I'm serious, foo.  Don't play. See if you can go to the movies on Thursday."   A.M. testified that he told [Petitioner] he would go because he wanted the fireworks, but he did not actually intend to go.  [Petitioner] later said, "Left [sic] me hit that."  A.M. testified that meant, "[h]e wanted to fuck me."  [Petitioner] subsequently said, "Nah, we go to the movies on Thursday and after let me fuck you.  Or just let me fuck you."  A.M. said he needed to buy fireworks, but [Petitioner] said, "Yeah.  But let me fuck you first" and repeatedly said, "Let me hit first."  [Petitioner] later stated, "[B]end over for me on Thursday before you go to Mexico."  A.M. testified that at first he felt [Petitioner] was joking, but after several times it "just felt weird" and A.M. blocked [Petitioner] from his Facebook account.

**(c) Uncharged Sexual Offense Evidence: Victim D.R. (Including February 2014 Events).**

D.R. was born in March 2005 and, when he was eight years old, he lived in Baldwin Park.  D.R. would play with his friend Jose at Jose's house.  D.R. met [Petitioner] there.   D.R. would often talk to [Petitioner] about baseball and

basketball when he was at Jose's house.  [Petitioner] would play basketball with D.R. and Jose at a neighborhood church.

D.R. had a Facebook account and, when [Petitioner] asked, D.R. told him his Facebook user name.  [Petitioner] sent him a friend request on Facebook and D.R. accepted.  Janette R. (Janette), D.R.'s mother, monitored D.R.'s Facebook account.

In February 2014, when D.R. was still eight years old, [Petitioner] sent D.R. a message that asked, "Where's your mom and dad?"  Janette saw the message and, in an effort to obtain information, she pretended to be D.R. and communicated with [Petitioner] on D.R.'s Facebook account for three consecutive days.  The communications below between [Petitioner] and Janette (posing as D.R.) were private messages between the two Facebook accounts.

On February 23, 2014, [Petitioner] asked, "Anyone watching you?" and said, "I'm coming to your house."  [Petitioner] said, "I want to tell you something."  [Petitioner] again asked, "[I]s there anyone watching you?"  Janette, as D.R., replied "yes."

On February 24, 2014, [Petitioner] asked if D.R. could keep a secret. Janette said yes. [Petitioner] asked if anyone was with D.R.  Janette indicated no. [Petitioner] said he was serious and Janette said she was too.  [Petitioner] said he could not tell D.R., and said, "never mind."  [Petitioner] then wrote that D.R. might not like what he told him, "might tell," and would probably get mad at [Petitioner]. [Petitioner] also said he could get into trouble.  [Petitioner] expressed concern that he did not know that no one was with D.R. and he could not be sure he was really talking to D.R.  Janette responded, "They're in the living room watching TV and my dad is taking a shower."  [Petitioner] said he would tell D.R. his secret when D.R. came over that weekend.

[Petitioner] then asked, "What if I told you I want you to do something fore [sic ] me?"  Janette, as D.R., said he would do it.  [Petitioner] said, "I want you to—never mind.  I can't say it."  "Because it's wrong."  [Petitioner] said, "I want to do something to you."  [Petitioner] then wrote, "I want to touch your butt."  Janette responded "LOL," but [Petitioner] replied he was serious.  [Petitioner] asked if D.R. would "let" [Petitioner], and Janette replied yes.  [Petitioner] asked, "Can I put my finger in your butt?"  Janette replied, "LOL.  You're funny."  [Petitioner] asked, "Can I?"  Janette said no and it would hurt.  [Petitioner] said he would be gentle.

Janette was angry but after consulting with her husband decided to continue the ruse.  She replied "no" to [Petitioner]'s last message.  [Petitioner] said D.R. was mad at [Petitioner]. Janette denied it but said, "I don't want to talk about that."  Janette later said, "I don't think anybody likes the finger up their butt. LOL." [Petitioner] replied, "Hey, delete the messages, okay?"  [Petitioner] asked if D.R. would do something else for [Petitioner], but [Petitioner] said, "never mind." [Petitioner] said, "Because if you won't let me put my finger, then you won't do this."  Janette told [Petitioner] goodbye.  [Petitioner] said goodbye, and told D.R. to delete all the messages, "don't tell anyone," and "message me when you're done and no one is with you."

On February 25, 2014, [Petitioner] wrote, "I love you my little friend." Janette printed the above messages and gave them to the police.

**(d) Additional Investigation.**

On September 2, 2014, police arrested [Petitioner].  A search of a cell phone found on his person showed contacts with pornographic websites involving sexual abuse of young boys, and contact with a website with the subject "ever had a creepy [pedophile] teacher."  The phone also contained a photograph of A.M.

Police searched [Petitioner]'s home and found three additional cell phones. One contained a downloaded pornographic video involving young boys and reflected Internet searches for pornographic photographs of children and teenagers and pornographic stories about boys. Another cell phone reflected Internet searches of "Kidslivesafe.com," a website teaching parents how to keep kids safe from pedophiles and sex offenders.

(LD 2 at 4-9.)

## PETITIONER'S CONTENTIONS

1.    Petitioner was denied effective assistance of counsel before and during the preliminary hearing because his counsel failed to: (a) conduct an adequate investigation; (b) challenge the probable cause for Petitioner's arrest for a crime against C.L.; (c) review the Facebook messages to C.L.; and (d) cross-examine C.L. regarding her testimony that the initials "C.M." were in a Facebook message. (Pet. at 5, 18-22.)[2]

2.    Petitioner was denied effective assistance of counsel during post-conviction proceedings because his appellate counsel failed to argue that: (a) Petitioner was denied effective assistance of counsel, as alleged in Ground One; and (b) Petitioner's arrest violated the Fourth Amendment, as alleged in Ground Three. (Pet. at 5, 22.)

3.    Petitioner's arrest violated the Fourth Amendment. (Pet. at 6, 24-26.)

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs the Court's consideration of Petitioner's cognizable federal claims. 28 U.S.C. § 2254(d), as amended by AEDPA, states:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the

---

[2]    The Court will use the page numbers assigned by the CM/ECF system.

adjudication of the claim - (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under AEDPA, the "clearly established Federal law" that controls federal habeas review of state court decisions consists of holdings (as opposed to dicta) of Supreme Court decisions "as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000); see also Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003) (clearly established federal law is "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision"). "[I]f a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision." White v. Woodall, 572 U.S. 415, 426 (2014) (internal quotation marks and citation omitted). If there is no Supreme Court precedent that controls a legal issue raised by a habeas petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law. Wright v. Van Patten, 552 U.S. 120, 125-26 (2008) (per curiam); see also Carey v. Musladin, 549 U.S. 70, 76-77 (2006).

A federal habeas court may grant relief under the "contrary to" clause if the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. Williams, 529 U.S. at 405-406. "The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle . . . but unreasonably applies it to the facts of a particular case." Bell v. Cone, 535 U.S. 685, 694 (2002). An unreasonable application of Supreme Court holdings "must be objectively unreasonable, not merely wrong." White, 572 U.S. at 419 (citing Andrade, 538 U.S. at 75-76; internal quotation marks omitted). "A state court's determination that a claim

1   lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on

2   the correctness of the state court's decision."  Harrington v. Richter, 562 U.S. 86, 101 (2011)

3   (citation omitted).  The state court's decision must be "so lacking in justification that there

4   was an error well understood and comprehended in existing law beyond any possibility for

5   fairminded disagreement."  Id. at 102.  "If this standard is difficult to meet, that is because it

6   was meant to be."  Id.

7          A state court need not cite Supreme Court precedent when resolving a habeas corpus

8   claim.  See Early v. Packer, 537 U.S. 3, 8 (2002).  "[S]o long as neither the reasoning nor the

9   result of the state-court decision contradicts [Supreme Court precedent,]" the state court

10  decision will not be "contrary to" clearly established federal law.  Id.

11         A state court's silent denial of federal claims constitutes a denial "on the merits" for

12  purposes of federal habeas review, and the AEDPA deferential standard of review applies.

13  Richter, 562 U.S. at 98-99.  When no reasoned decision is available, the habeas petitioner

14  has the burden of "showing there was no reasonable basis for the state court to deny relief."

15  Id. at 98.  The federal habeas court must conduct an independent review of the record to

16  determine whether the state court decision is objectively reasonable.  See Stanley v. Cullen,

17  633 F.3d 852, 860 (9th Cir. 2011); Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

18         When a reasoned decision is available, the federal habeas court "looks through" a

19  state court's unexplained decision to the last reasoned decision of a lower state court, and

20  applies the AEDPA standard to that decision.  See Wilson v. Sellers, 138 S. Ct. 1188, 1192

21  (2018) (federal habeas court should "look through" unexplained state court decision to last

22  state court decision "that does provide a relevant rationale" and "should then presume that

23  the unexplained decision adopted the same reasoning," although presumption may be

24  rebutted); Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) ("Where there has been one

25  reasoned state judgment rejecting a federal claim, later unexplained orders upholding the

26  judgment or rejecting the same claim rest upon the same ground.").

27

28

1          **DISCUSSION**

2   **I.      Ground One Does Not Warrant Federal Habeas Relief**

3          In Ground One, Petitioner contends that defense counsel rendered ineffective

4   assistance before and during the preliminary hearing because he failed to: (a) conduct an

5   adequate investigation; (b) challenge the probable cause for Petitioner's arrest for a crime

6   against C.L.; (c) review the Facebook messages to C.L.; and (d) cross-examine C.L.

7   regarding her testimony that the initials "C.M." were in a Facebook message.  (Pet. at 5, 18-

8   22.)  Petitioner presented this claim to the California Supreme Court by habeas petition and

9   the California Supreme Court denied it summarily.  (LD 9, 10.)  For the reasons set forth

10  below, Petitioner has not shown that there was no reasonable basis for the state court to

11  deny relief.  Richter, 562 U.S. at 98.

12         **A.      Applicable Federal Law**

13         Review of an ineffective assistance of counsel claim involves a two-step analysis.

14  See Strickland v. Washington, 466 U.S. 668, 687 (1984).  First, Petitioner must prove that

15  his attorney's representation fell below an objective standard of reasonableness.  Id. at 687-

16  88.  Second, Petitioner must show that he was prejudiced by counsel's deficient

17  performance.  Id. at 687.  Petitioner must prove both elements.  Id.  The Court may reject the

18  petitioner's claims upon finding either that counsel's performance was reasonable or that the

19  claimed error was not prejudicial.  Id. at 697; see Rios v. Rocha, 299 F.3d 796, 805 (9th Cir.

20  2002) ("[f]ailure to satisfy either prong of the Strickland test obviates the need to consider the

21  other").

22         Moreover, courts generally maintain a "strong presumption that counsel's conduct falls

23  within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689.

24  Indeed, the Supreme Court dictates that "[j]udicial scrutiny of counsel's performance must be

25  highly deferential."  Id.  In order to show that his counsel's performance was objectively

26  unreasonable, Petitioner must overcome the strong presumption that the challenged action

27  might be considered sound trial strategy under the circumstances.  Id.  A reasonable tactical

28

1   decision by counsel with which Petitioner disagrees cannot form a basis for an ineffective

2   assistance of counsel claim.  See id. at 690.  The Court does not consider whether another

3   lawyer with the benefit of hindsight would have acted differently than Petitioner's defense

4   counsel.  Id. at 689.  Instead, the Court looks only to whether Petitioner's defense counsel

5   made errors so serious that counsel failed to function as guaranteed by the Sixth

6   Amendment.  Id. at 687.  In conducting this analysis, the Court must make "every effort . . .

7   to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

8   challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Id.

9   at 689.

10        Assuming that Petitioner can show that his counsel's performance was unreasonable,

11   the Court still must determine whether counsel's performance prejudiced Petitioner.  See

12   Strickland, 466 U.S. at 694.  Petitioner can prove prejudice by demonstrating "a reasonable

13   probability that, but for counsel's unprofessional errors, the result of the proceeding would

14   have been different."  Id.  A "reasonable probability" is "a probability sufficient to undermine

15   confidence in the outcome."  Id.

16        "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and

17   when the two apply in tandem, review is 'doubly' so."  Richter, 562 U.S. at 105 (internal

18   citations omitted); see also Cullen v. Pinholster, 563 U.S. 170, 190  (2011) (review of state

19   court's adjudication of Strickland claim is "doubly deferential" (citation omitted)).  To succeed

20   on an ineffective assistance of counsel claim governed by Section 2254(d), "it is not enough"

21   to persuade a federal court that the Strickland test would be satisfied if a claim "were being

22   analyzed in the first instance."  Bell v. Cone, 535 U.S. 685, 698-99 (2002).  It also "is not

23   enough to convince a federal habeas court that, in its independent judgment, the state-court

24   decision applied Strickland incorrectly."  Id. at 699.  Rather, Petitioner must show that the

25   state courts "applied Strickland to the facts of his case in an objectively unreasonable

26   manner."  Id.

27

28

**B.   Background**

Petitioner was arrested on September 2, 2014.  (LD 16, 3 Reporter's Transcript ("RT") 443-44.)  He was arrested for a charge based on messages to C.L.; charges relating to three other minor victims (F.H., A.M., and D.R.) were added later.  (Pet. at 18, 30.)  Petitioner was represented by counsel at the preliminary hearing, which was held on January 30, 2015.  (1 CT 1.)  On February 6, 2015, the court heard argument and held Petitioner to answer on four counts: contacting C.L. for sexual offense (Count One); molesting F.H. (Count Three); contacting A.M. for sexual offense (Count Four); and arranging to meet A.M. for lewd purposes (Count Six).  (1 CT 128-30.)  The court granted defense counsel's motion to dismiss two other counts, including the count relating to D.R.  (1 CT 128.)

On March 24, 2015, the trial court granted Petitioner's motion to represent himself.  (1 CT 144.)  Count One was dismissed before trial after the prosecution concluded that it did not have sufficient evidence to prove it.  (2 CT 196, 239-40; 2 RT B7, B17.)  The trial court also dismissed Count Six, but permitted the prosecution to add a corresponding attempt count as Count Seven.  (2 CT 196, 239-40; 2 RT B5-B6, B17.)

**C.   Analysis**

**1.   Probable Cause**

Petitioner contends that defense counsel should have challenged the probable cause for his arrest.  (Pet. at 18-20.)  He argues that the probable cause declaration in support of the warrant was untruthful because it combined messages to C.L. made on two platforms– Facebook and instant messaging service Kik -- and made it seem as if all the messages came from Facebook.  The gist of Petitioner's argument is that there was no evidence linking him to the sexual messages on Facebook because all the messages used to identify him were on Kik.  (Id.; Traverse at 7, 9.)

A defendant may challenge a warrant by attacking the statements in an affidavit in support of the warrant, but must show that (1) the affiant intentionally or recklessly made a false or misleading statement or omission in support of the warrant, and (2) the false or

misleading statement or omission was necessary to a finding of probable cause.  See Franks
v. Delaware, 438 U.S. 154, 155-56 (1978); United States v. Martinez-Garcia, 397 F.3d 1205,
1214-15 (9th Cir. 2005).  The defendant must make a substantial preliminary showing on
both prongs to obtain a Franks hearing.  United States v. Chavez-Miranda, 306 F.3d 973,
979 (9th Cir. 2002).  Petitioner contends that the following statements in the probable cause
declaration were false: (1) the initials C.M. (which purportedly stood for "chicken man,"
Petitioner's nickname at C.L.'s school) were in a Facebook message; (2) the Facebook
messages indicated that the author's first initial was "J"; (3) the author of the Facebook
messages gave C.L. snacks at school; and (4) Petitioner texted C.L.'s cell phone with
inappropriate communications.  (Pet. at 18, 26.)  The probable cause declaration attached to
the Petition does not expressly mention Facebook, but describes "a series of
communications" through social media and to C.L.'s cell phone.  (Id. at 30.)  Furthermore,
the Facebook messages identified the author as "Triple Jay" (id. at 33; 1 CT 7); the initials
"C.M." and "J" were mentioned in the Kik messages (Traverse at 23 ("My name starts wit a J
. . . my nick name starts with C M"));  and C.L. testified at the preliminary hearing that
Petitioner was known at school as "chicken man" and gave out food at lunch, and that the
author of the messages claimed to have given her snacks when he was giving out lunch (1
CT 9, 14-15).  Petitioner has not shown that a Franks motion would have been meritorious.
See James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994) (not ineffective to fail to file a futile
motion).

Moreover, Petitioner  challenged the probable cause for his arrest and brought a
motion to suppress under Cal. Penal Code § 1538.5 when he was representing himself.  (2
CT 189-93, 198-207; 2 RT C5, D4.)  The trial court denied the motions.  (2 CT 240; 2 RT D4-
D17.)  The trial court first found that there was probable cause to arrest Petitioner
irrespective of the probable cause with respect to C.L. because there was an outstanding
warrant for his arrest on a separate charge with respect to D.R.  (2 RT D7, D9, D12-D13.)
The trial court also noted that, with respect to C.L., additional information was presented in

14

1    support of the arrest warrant that was not presented at the preliminary hearing and

2    concluded that, if it were to reach the issue, it would find sufficient probable cause.  (2 RT

3    D9-D10.)  The trial court denied Petitioner's motion to suppress the phones that were seized

4    after his arrest.  It explained that even it had found no probable cause with respect to C.L.,

5    "exclusion probably would not be the remedy" because the phones were properly seized

6    after Petitioner was arrested and they were not searched until a separate search warrant

7    was issued.  (2 RT D10-D11; see 2 RT D4-D5; 2 CT 223-30.)  Finally, the trial court noted

8    that Petitioner's motion to suppress also sought dismissal of the counts added after his

9    arrest and explained that, even if it found an illegal arrest, the result would not be "automatic

10   dismissal" of the other counts.  (2 RT D16-D17; see 2 CT D6.)

11        In order to show prejudice from counsel's failure to litigate a Fourth Amendment claim,

12   Petitioner must show a reasonable probability that the motion to suppress would have been

13   successful and the outcome of the trial would have been different.  See Kimmelman v.

14   Morrison, 477 U.S. 365, 375 (1986); Lowry v. Lewis, 21 F.3d 344, 346-47 (9th Cir. 1994).

15   Petitioner has shown neither.  Petitioner litigated the motions he faults counsel for not

16   bringing and the trial court denied them.  Moreover, Petitioner was not tried for any offense

17   against C.L.; she did not testify at trial; and no evidence regarding any messages to her was

18   introduced.  Even if defense counsel had succeeded in showing no probable cause with

19   respect to Petitioner's arrest for a crime against C.L., Petitioner's prosecution on charges

20   involving other victims would have continued and the evidence at trial would have been the

21   same.  Petitioner has not shown prejudice.  See Strickland, 466 U.S. at 694.

22        Accordingly, the California Supreme Court reasonably rejected this ineffective

23   assistance claim.  See Richter, 562 U.S. at 98.

24                    **2.    Inadequate Investigation and Cross-Examination of C.L.**

25        Petitioner contends that counsel failed to conduct an adequate investigation before

26   the preliminary hearing, did not review the Facebook messages to C.L., and did not cross-

27

28

1  examine C.L. regarding her false testimony that the initials "C.M." were in a Facebook

2  message.  (Pet. at 20, 22.)

3        Petitioner has not shown that he was prejudiced by counsel's alleged lack of

4  preparation, or by counsel's allegedly inadequate cross-examination of C.L. at the

5  preliminary hearing.  C.L. testified that at some point during the timeframe of the Facebook

6  communications, the author of the messages stated that he was known at her school as

7  "C.M." (1 CT 9.)  C.L. did not expressly testify that the reference to "C.M." was on Facebook,

8  but that was the implication because the prosecution only introduced Facebook messages

9  and only questioned her about Facebook communications.  (1 CT 4-15.)  In fact, the initials

10  "C.M." did not appear on any of the Facebook messages but on a message to her on Kik.  (2

11  RT B7; Traverse at 23; see also Traverse at 9 (explaining that the "C.M." initials were in the

12  Kik messages, not the Facebook messages)).

13        Even assuming that cross-examining C.L. to elicit testimony that the reference to

14  "C.M." was not on Facebook would have made a difference with respect to whether

15  Petitioner was held to answer on Count One, the evidence had no bearing on whether

16  Petitioner should be held to answer on the other counts.  Count One was dismissed before

17  trial after the prosecution concluded that it did not have sufficient evidence to prove it.  (2 RT

18  B7, B17; 2 CT 196.)  C.L. did not testify at trial and her preliminary hearing testimony was

19  not introduced.  Any deficiencies in counsel's representation with respect to investigating the

20  evidence underlying Count One and cross-examining C.L. at  the preliminary hearing could

21  not have prejudiced Petitioner at trial and had no effect on the verdicts.  See Strickland, 466

22  U.S. at 694.

23                    *******************************

24        Accordingly, the state court's rejection of Ground One was not contrary to, or an

25  unreasonable application of, clearly established federal law as set forth by the United States

26  Supreme Court.  Ground One does not warrant federal habeas relief.

27

28

1  **II.    Ground Two Does Not Warrant Federal Habeas Relief**

2  In Ground Two, Petitioner contends that he was denied effective assistance of

3  counsel during post-conviction proceedings because appellate counsel failed to argue that:

4  (a) Petitioner was denied effective assistance of counsel at the preliminary hearing; and (b)

5  Petitioner's arrest violated the Fourth Amendment.  (Pet. at 19.)

6  **A.    Standard of Review**

7  Respondent renews his argument that Ground Two(a) was not fairly presented to the

8  California Supreme Court and is unexhausted. The Court will not determine whether

9  Petitioner fairly presented Ground Two(a) to the California Supreme Court under applicable

10  standards because, as shown below, the claim clearly fails on de novo review.  Although a

11  federal court cannot grant habeas relief on an unexhausted claim, it may deny an

12  unexhausted claim on the merits "when it is perfectly clear that the applicant does not raise

13  even a colorable federal claim." Cassett v. Stewart, 406 F.3d 614, 623–24 (9th Cir. 2005);

14  see 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on

15  the merits, notwithstanding the failure of the applicant to exhaust the remedies available in

16  the courts of the State.")

17  Petitioner presented Ground Two(b) to the California Court of Appeal by habeas

18  petition, which the Court of Appeal denied summarily. (LD 7-8.)  The California Supreme

19  Court summarily denied review.  (LD 13.)  Petitioner re-raised the claim in a habeas petition

20  to the California Supreme Court, which denied it on procedural grounds.  (LD 11-12.)  For

21  the reasons set forth below, Petitioner has not shown that there was no reasonable basis for

22  the California Supreme Court to deny relief.  See Richter, 562 U.S. at 98.

23  **B.    Applicable Federal Law**

24  The right to effective assistance of counsel encompasses the right to effective

25  assistance of appellate counsel on a first appeal as of right.  Evitts v. Lucey, 469 U.S. 387,

26  394 (1985); Moormann v. Ryan, 628 F.3d 1102, 1106 (9th Cir. 2010).  The analytical

27  framework of Strickland governs: the petitioner must show that (1) appellate counsel's

28

1   performance fell below an objective standard of reasonableness, and (2) there is a

2   reasonable probability that, but for counsel's failure to raise an issue, the petitioner would

3   have prevailed on appeal.  Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir. 1989); see also

4   Moormann, 628 F.3d at 1106 (deficient performance prong "requires the petitioner to

5   demonstrate that counsel acted unreasonably in failing to discover and brief a merit-worthy

6   issue"; prejudice prong requires petitioner "to demonstrate a reasonable probability that, but

7   for appellate counsel's failure to raise the issue, the petitioner would have prevailed in his

8   appeal").  "[A]ppellate counsel's failure to raise issues on direct appeal does not constitute

9   ineffective assistance when appeal would not have provided grounds for reversal."  Wildman

10  v. Johnson, 261 F.3d 832, 840 (9th Cir. 2001).

11        The Ninth Circuit has explained:

12        In many instances, appellate counsel will fail to raise an issue because she

13        foresees little or no likelihood of success on that issue; indeed, the weeding out

14        of weaker issues is widely recognized as one of the hallmarks of effective

15        appellate advocacy. . . .  Appellate counsel will therefore frequently remain

16        above an objective standard of competence (prong one) and have caused her

17        client no prejudice (prong two) for the same reason – because she declined to

18        raise a weak issue.

19  Miller, 882 F.2d at 1434 (footnote omitted).

20        **C.      Ground Two (a)**

21        Petitioner contends that appellate counsel was ineffective because he failed to argue

22  that defense counsel provided ineffective assistance at the preliminary hearing.  (Pet. at 22.)

23  He contends that appellate counsel should have argued that defense counsel was ineffective

24  for the reasons set forth in Ground One, namely, he failed to: (a) challenge the probable

25  cause for Petitioner's arrest; (b) conduct an adequate investigation and review the Facebook

26  messages concerning C.L.; and (c) cross-examine C.L. regarding her  testimony that the

27  initials "C.M." were in a Facebook message.  (Pet. at 17-19.)

28

The California Supreme Court has stressed that ineffective assistance claims requiring factual development of matters outside the trial record are properly raised by habeas petition rather than on direct appeal. People v. Mendoza Tello, 15 Cal.4th 264, 267-68 (1997) (whether trial counsel was ineffective for failing to file motion to suppress could not be determined from record on appeal). For this reason alone, appellate counsel's failure to raise this claim on appeal was not unreasonable. Nor can appellate counsel be deemed ineffective for failing to raise the claim by habeas petition, because appointed appellate counsel have no duty to file habeas petitions on their clients' behalf. See In re Golia, 16 Cal. App. 3d 775, 786 (1971); see also Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) ("the right to appointed counsel extends to the first appeal of right, and no further").

Furthermore, Petitioner "cannot sustain his claim for ineffective assistance of appellate counsel because the issues he raises are without merit." Wildman, 261 F.3d at 840. As discussed in connection with Ground One, (1) a Franks motion would not have been meritorious; (2) the motions to suppress were denied by the trial court when Petitioner brought them; and (3) the deficiencies he identifies in counsel's performance at the preliminary hearing all related to the offense against C.L., a charge that was dismissed before trial. The jury that convicted Petitioner of crimes against other victims never heard any evidence regarding C.L. Thus, Petitioner's ineffective assistance of defense counsel claim fails for lack of prejudice, and there is no reasonable likelihood that Petitioner would have obtained relief if appellate counsel had raised this claim. Moormann, 628 F.3d at 1106; Wildman, 261 F.3d at 840.

Accordingly, Ground Two(a) does not warrant federal habeas relief.

**D.    Ground Two(b)**

In Ground Two(b), Petitioner contends that appellate counsel was ineffective for failing to argue that Petitioner's arrest violated the Fourth Amendment. (Pet. at 22, 26.)

Again, Petitioner has not shown a reasonable probability of reversal if appellate counsel had raised this Fourth Amendment claim on appeal. See Moormann, 628 F.3d at

1106; Wildman, 261 F.3d at 840. As discussed in connection with Ground One, Petitioner did not have a viable claim that the probable cause declaration in support of the arrest warrant contained false or misleading statements or omissions that were necessary to a finding of probable cause. Moreover, as the trial court found when Petitioner litigated this issue, there was sufficient probable cause to support his arrest on the C.L charge; there was a second outstanding warrant for Petitioner's arrest on a charge concerning victim D.R.; and there were separate search warrants for the search of Petitioner's phones, which provided additional evidence against him. (2 RT C5, D7, D9-D13.) Finally, as previously explained, Count One with respect to C.L. was dismissed before trial, no evidence regarding C.L. was introduced at trial, and any infirmity in Plaintiff's arrest for a crime against C.L. had no effect on his convictions for crimes against F.H. and A.M.

Accordingly, the state court's rejection of Ground Two(b) was not contrary to, or an unreasonable application of, clearly established federal law as set forth by the United States Supreme Court. Ground Two(b) does not warrant federal habeas relief.

## III.   Ground Three Does Not Warrant Federal Habeas Relief

In Ground Three, Petitioner contends that his arrest violated the Fourth Amendment and he did not receive a full and fair opportunity to litigate his Fourth Amendment claim. (Pet. at 24, 26.)

Petitioner presented this claim to the state courts and received both silent and procedural denials. The Court will not analyze the procedural history to determine which is the pertinent decision for AEDPA purposes because, as discussed below, the claim is non-cognizable on de novo review. See Berghuis v. Thompkins, 560 U.S. 370, 390 (2010) ("Courts can, however, deny writs of habeas corpus under § 2254 by engaging in de novo review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review, see § 2254(a).").

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1975) (footnotes omitted).  In other words, "[a] Fourth Amendment claim is not cognizable in federal habeas proceedings if a petitioner has had a full and fair opportunity to litigate the claim in state court." Ortiz–Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996).  "The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." Id.; see also Moormann v Schriro, 426 F.3d 1044, 1053 (9th Cir. 2005) ("If the state has provided a state prisoner an opportunity for full and fair litigation of his Fourth Amendment claim, we cannot grant federal habeas relief on the Fourth Amendment issue.").

California provides criminal defendants with a full and fair opportunity to litigate their Fourth Amendment claims by filing motions to suppress under Cal. Penal Code § 1538.5. See Gordon v. Duran, 895 F.2d 610, 613-14 (9th Cir. 1990).  Petitioner filed several motions asserting Fourth Amendment violations in connection with his arrest and the subsequent seizure of his phones.  (See 2 CT 189-93 ["non statutory" Section 995 motion to dismiss and Section 1538.5 motion to dismiss for no probable cause for arrest]; 2 CT 198-200 [motions requesting evidentiary hearing, probable cause hearing, and exclusionary hearing]; 2 CT 201-02 [Section 1538.5 motion for return of property or suppression of evidence]; 2 CT 203-07 [two additional motions alleging Fourth Amendment violations].)  As discussed in connection with Ground One, the trial court denied the motions after hearing argument and carefully explaining its rulings.  (2 RT D4-D17.)  Petitioner, therefore, had an opportunity to litigate his Fourth Amendment claims and availed himself of it.  See Newman v. Wengler, 790 F.3d 876, 881 (9th Cir. 2015) ("All Stone v. Powell requires is the initial opportunity for a fair hearing." (quoting Caldwell v. Cupp, 781 F.2d 714, 715 (9th Cir.1986))); see also Mason v. Martinez, No. 2:15-cv-021760-JKS, 2017 WL 3593714, at *5 (E.D. Cal. Aug. 21, 2017)

21

1    (noting that "numerous courts addressing the issue have applied the <u>Stone</u> doctrine to a

2    <u>Franks</u> claim").

3         Petitioner argues that <u>Stone</u> does not bar his Fourth Amendment claims because

4    without an evidentiary hearing he did not receive a full and fair opportunity to litigate them.

5    (Pet. at 24; Traverse at 10.)  Under the circumstances of this case, Petitioner's argument

6    lacks merit.  When Petitioner expressed an intent to file a Section 1538.5 motion, the trial

7    court told him "that's an evidentiary hearing usually," and the trial court and the prosecutor

8    discussed a time frame that would enable the prosecutor to subpoena witnesses.  (2 RT

9    B13-B15, C2-C4.)  But although Petitioner filed requests for an evidentiary hearing and a

10   probable cause hearing (2 CT 198-99), his Fourth Amendment claims did not require factual

11   development or resolution of disputed facts.  <u>See</u> Cal. Penal Code § 1538.5(c)(1) (court

12   "shall receive evidence on any issue of fact necessary to determine the motion").  By the

13   time of the hearing, Petitioner had succeeded in clarifying which messages to C.L. were on

14   Facebook and which were on Kik, and he had obtained the dismissal of Count One, the only

15   count that was based on messages to C.L.  Petitioner had an opportunity to present his

16   arguments as to why probable cause was lacking, and the trial court addressed his

17   arguments and explained its rulings.  (2 RT D4-D16.)  There was no unfairness in resolving

18   the motions without an evidentiary hearing.  <u>See</u> <u>Ewing v. Smelosky</u>, No. CV 06-4774-PSG

19   (JC), 2010 WL 4794030, at *6 & n.16 (C.D. Cal. Oct. 15, 2010)  (petitioner's claim that police

20   had no legal basis to arrest him was not cognizable under <u>Stone</u> and trial court's denial of

21   <u>Franks</u> motion and motion to suppress without evidentiary hearing did not render Fourth

22   Amendment claim cognizable), <u>accepted by</u> 2010 WL 4794027 (C.D. Cal. Nov. 16, 2010).

23        Accordingly, Ground Three does not warrant federal habeas relief.

24   **IV.   <u>Petitioner Is Not Entitled to An Evidentiary Hearing</u>**

25        Petitioner has requested an evidentiary hearing.  (Traverse at 2.)  The United States

26   Supreme Court has held that federal habeas review under 28 U.S.C. § 2254(d)(1) "is limited

27   to the record that was before the state court that adjudicated the claim on the merits."

28

1   <u>Pinholster</u>, 563 U.S. at 181.  "[A]n evidentiary hearing is pointless once the district court has

2   determined that § 2254(d) precludes habeas relief."  <u>Sully v. Ayers</u>, 725 F.3d 1057, 1075

3   (9th Cir. 2013).  As for the claims reviewed <u>de novo</u>, an evidentiary hearing is not warranted

4   when "the record refutes the applicant's factual allegations or otherwise precludes habeas

5   relief."  <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007).  Petitioner, therefore, is not entitled

6   to an evidentiary hearing.

### CERTIFICATE OF APPEALABILITY

8   Pursuant to Rule 11 of the Rules Governing Section 2254 cases, the Court "must

9   issue or deny a certificate of appealability when it enters a final order adverse to the

10  applicant."  For the reasons stated above, the Court concludes that Petitioner has not made

11  a substantial showing of the denial of a constitutional right, as is required to support the

12  issuance of a certificate of appealability.  <u>See</u> 28 U.S.C. § 2253(c)(2).

### ORDER

14  IT IS ORDERED that: (1) the Petition is denied; (2) an evidentiary hearing is denied;

15  (3) a certificate of appealability is denied; and (4) Judgment shall be entered dismissing this

16  action with prejudice.

18  DATED: <u>September 14, 2020</u>                    */s/ John E. McDermott*
                                                        JOHN E. MCDERMOTT
19                                                      UNITED STATES MAGISTRATE JUDGE